UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RHONDA M. McGRUDER** | : | **DOCKET NO. 14-cv-01202** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of disability insurance benefits and supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

### I.
#### PROCEDURAL HISTORY

On October 20, 2011, plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") alleging disability beginning on April 15, 2009. Tr. 94-97, 98-103. She claimed disability due to "2 degenerative disc[s] and pinched nerve damage." Tr. 114. The claims were initially denied on January 5, 2012. Tr. 39-55. Plaintiff requested and was granted an administrative hearing which was held on December 5, 2012. Tr.

21-38. Plaintiff was not represented at the hearing.[1]

On January 23, 2013, the Administrative Law Judge ("ALJ") issued an unfavorable decision. Tr. 6-17. In his decision, the ALJ found that plaintiff had the severe impairment of degenerative lumbar disc disease but retained the residual functional capacity ("RFC") to perform a reduced range of light work. *Id.* Relying on testimony of a vocational expert ("VE") the ALJ determined that jobs existed in significant numbers that plaintiff was capable of performing. *Id.*

Plaintiff filed a request for appellate review of this decision and on April 14, 2014, the Appeals Council denied her request for review. Tr. 1-3. On June 13, 2014, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## II
### FACTS AND MEDICAL EVIDENCE

*A. Facts*

Plaintiff was forty years old on the date of the hearing which was held on December 5, 2012. Tr. 94. She lives by herself with her three children. Tr. 29. She completed thirteen years in school and has special training as a pharmacy technician. Tr. 30. She testified that she last worked in April 2009 as a helper setting up for events at the Lake Charles Civic Center. Tr. 26. Prior to that she worked as a cashier at a convenience store, a nurse's aide, and in a warehouse at an auto parts store. Tr. 27-28. She testified that she has applied for jobs since 2009 but she cannot find one she is capable of performing with her condition. Tr. 28.

Plaintiff stated that she could lift twenty pounds occasionally and ten pounds frequently. Tr. 28-29. She is able to shop, drive, and attend church. Tr. 29. She does not use an assistive

---

[1] The record shows that plaintiff was represented by an attorney from at least November 2, 2011 through April 19, 2012. Tr. 60, 73.

device to ambulate but does wear a back brace which she stated helps with her lower back pain. Tr. 30-31.

### B. Medical Evidence

#### 1. Bernauer Clinic, R. Dale Bernauer, M.D. [2]

The medical records reflect that plaintiff saw Dr. Bernauer in March of 2008 and complained of her back "going out" at times. She was next seen in April of 2008 for a follow up appointment. Tr. 311, 310.

In May of 2009 the Southwest Louisiana Center for Health Services referred plaintiff to Dr. Bernauer for lower back pain/degenerative disc disease. Tr. 313. At a visit on July 22, 2009, plaintiff gave a history of being in a motor vehicle accident in 1997 where she was hit from the side. She complained of back pain and bilateral leg pain and stated that she had been treated by a chiropractor and physical therapist with no improvement. Examination of her back on that day revealed flexion of 40 degrees, extension of 0 degrees, right flexion of 10 degrees and left flexion of 10 degrees. The straight leg raise test was positive bilaterally. Her dorsi flexors, extensor hallucis longus, plantar flexors, quadriceps, and hamstrings were all "strong." The squeeze test was negative, and peroneal nerve sign was negative. X-rays showed a narrowing at L4-5 and L5-S1. Dr. Bernauer ordered an MRI of the lumbar spine and an EMG test of both legs. Tr. 302.

At her appointment on August 19, 2009, Dr. Bernauer reported that her EMG and MRI were "positive" at levels L4-5 and L5-S1. He noted her "long history" of back problems and opined that she was "exhausted with her treatment and needs surgery done." Tr. 294, 296.

---

[2] Dr. Bernauer's handwritten notes are illegible; however, following each of plaintiff's appointments a typed report was sent to the SWLA Center for Health Services, the clinic that referred plaintiff to Dr. Bernauer. These facts are primarily taken from those typed reports.

Dr. Bernauer's first request for plaintiff to be treated for surgery at LSU Health Science Center in Shreveport was sent on September 8, 2009. Tr. 274. At her appointment on October 12, 2009, he noted that she still did not have an appointment in Shreveport and that she had not improved. Plaintiff complained of some groin pain but x-rays were normal. Tr. 285-85.

Plaintiff appeared monthly at Dr. Bernauer's office from November 2009 through March 2010. At each visit Dr. Bernauer noted that she still had not been seen in Shreveport and that she continued to complain of back pain and leg pain. Tr. 283, 281-82, 279-80, 271-72, 267-68, 265.

A letter dated March 31, 2010, from LSU Health Science Center in Shreveport to Dr. Bernauer notified Dr. Bernauer that plaintiff did not meet the criteria for the clinic. Tr. 260. On April 5, 2010, Dr. Bernauer referred plaintiff to Dr. Anin Nanda for surgery. Tr. 258. Plaintiff continued to appear monthly at Dr. Bernauer's office from May through October 2010. At each visit Dr. Bernauer noted that plaintiff had not heard anything from Dr. Nanda and that she continued to complain of back and leg pain. Tr. 249-50, 246-47, 244-45, 242-43, 240-41, 238-39.

On November 10, 2010, Dr. Bernauer saw plaintiff who complained of back and leg pain and he noted that she and spoken to Dr. Nanda. Tr. 236-37. At her December 8, 2010 appointment she complained of back and leg pain and the report indicates that she is awaiting Dr. Nanda's surgery. Tr. 234-35. In January 2011 Dr. Bernauer reported that plaintiff has to "see Dr. McLurkin and then be referred to Dr. Nanda." Tr. 232. From February through October plaintiff returned monthly for her appointment and she complained of back pain and leg pain. These records indicate that she was still awaiting surgery. Tr. 231, 228-29, 225-26, 223-24, 220-21, 218-19, 216-17, 214-15, 212, 211.

An impairment questionnaire dated December 14, 2011, was offered as evidence by plaintiff on the date of the hearing. Plaintiff argues in brief that it was prepared by Dr. Bernauer;

however, the signature on the document is illegible and there is no testimony as to who prepared the document. The form is only partially complete but does indicate that plaintiff's impairments of back pain and bilateral leg pain interfere frequently with the attention and concentration needed to perform simple work related tasks. It also indicates that plaintiff can sit for 30 minutes at a time and for 4 hours in an 8 hour work day. It specifies that plaintiff can stand for 5 minutes at a time and for 2 hours in an 8 hour work day. The form notes that plaintiff requires a job which allows her to shift positions from sitting, standing, and walking and that she will need unscheduled breaks during an 8 hour workday. The remainder of the form is blank; for example, sections concerning the amount of weigh she can lift/carry, her limitations in reaching, handling, fingering, how often she would be absent from work, and whether or not she is capable of working an 8 hour day are not completed. Tr. 323-24.

    2. *MRI Reports*

An MRI dated March 14, 2008, performed at Advanced MRI showed moderate lumbar spondylosis predominately involving the lower lumbar segments. There was no definite cord compression and no nerve root impingement was appreciated. The study showed disc bulges at L3-L4, L4-L5, L5-S1. Tr. 308

A second MRI performed at Open Air MRI on August 4, 2009, showed central left paracentral disc protrusion at L3-4, disc bulging and bilateral neural canal narrowing at L4-5, disc bulging at L4-5, L5-S1 with small superimposed broad-based central disc protrusion. The study showed a tear in the outer annulus at this level and bilateral neural canal narrowing. Tr. 300-01.

The third MRI study was completed on November 8, 2011, at Open Air MRI. The report notes that the results were compared to the study done on August 4, 2009. The disc protrusion at the L3-4 level appeared "slightly less focal." The left lateral disc protrusion at L4-5 appeared new

when compared to the prior exam and the previously described disc protrusion at L5-S1 was not seen on the November 2011 study. The impression following this study was broad-based central disc protrusion at L3-4 with mild central canal narrowing, disc bulging at L4-5 with small superimposed left lateral disc protrusion and bilateral neural canal narrowing, and mild retrolisthesis of L5 on S1 with disc bulging or pseudobulging and bilateral neural canal narrowing. Tr. 200.

The last MRI dated November 2, 2012 was performed at Open Air MRI and was compared to the November 8, 2011 study. The results showed a "less prominent" midline disc protrusion at L3-4 with disc bulging, and "stable" disc bulging and paracentral left disc protrusion at L4-5 with lateral recess narrowing, as well as broad disc protrusion pattern and bulging at L5-S1. There was no evidence of detrimental change at the L4-5 or L5-S1. Tr. 326.

   3. *Neuro Associates, Fayez Shamieh, M.D.*

An EMG nerve conduction study performed on August 6, 2009, revealed evidence of denervations in the right and left tibialis anterior, peroneous longus, extensor hallucis longus, extensor digitorum, soleus and gastrocnemius muscles with prolongation of the H reflexes. Dr. Shamieh opined that this probably suggested the presence of mild L4-5 and L5-S1 radiculopathy bilaterally. Tr. 298-99.

A second EMG performed on September 19, 2012 revealed evidence of minimal denervations in the muscles in the lower extremities, suggesting the presence of an L5, S1 radiculopathy bilaterally. Tr. 332-33

   4. *Southern Medical Group, Deon Edgerson-George, M.D.*

Dr. Edgerson-George conducted a consultative physical examination on December 17, 2011. Dr. Edgerson-George reviewed Dr. Bernauer's records, plaintiff's MRI studies from 2009

and 2011 and her EMG study from 2009. Plaintiff reported that she was diagnosed with degenerative disc disease and nerve damage. She complained of pain with prolonged sitting and standing. Plaintiff also described weakness and tingling in both her lower extremities and numbness in her fingers. She rated her pain as a six to seven on a scale of one to ten. Plaintiff stated that her pain improves with medication. She reported that she needs help three to four times a week with dressing, bathing and cooking. She does not use any assistive devices for ambulation.

Upon examination Dr. Edgerson-George found plaintiff had limited range of motion in her shoulder and lumbar spine. She was able to rise from sitting position without assistance, stand on her tiptoes, and heel and tandem walk without problems. She was unable to bend and squat due to pain. She had 5/5 grip strength with adequate fine motor movements and ability to grasp objects bilaterally. She had good motor tone and possessed 5/5 muscle strength bilaterally in all muscle groups.

Plaintiff appeared mentally alert, oriented, and cooperative and did not appear depressed or anxious. She was able to communicate, her recent and remote memory were intact, and she possessed good insight and cognitive function.

Dr. Edgerson-George's diagnosis was degenerative disc disease and neuropathy. She concluded that plaintiff has limited mobility due to back pain. She opined that plaintiff should be able to sit, walk, and/or stand for a full workday but is unable to lift/carry objects without limitation due to limited mobility of her lumbar spine and shoulder. She noted that plaintiff would benefit from an assistive device for support and balance during ambulation. Dr. Edgerson-George stated that plaintiff was able to hold a conversation, respond appropriately to questions, and carry out and remember instructions. Tr. 316-18..

5. *Fred Ruiz, M.D.*

Dr. Ruiz completed a physical RFC assessment on January 5, 2012. He determined that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and walk for two hours in an eight hour work day, sit for six hours in an eight hour work day, and had unlimited push and pull ability. Plaintiff was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. She was prohibited from climbing ladders, ropes and scaffolds. She had no manipulative, visual, communicative, or environmental limitations. He opined that plaintiff maintained the ability to perform light work. Tr. 45-48.

## III.
### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## IV.
### LAW AND ANALYSIS

### A. *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[3]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job);

---

[3] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

>and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act because she had the RFC to perform a reduced range of light work and there were jobs that existed in significant numbers in the national economy that she could perform.

### *B. Plaintiff's Claims*

In her appeal plaintiff argues that substantial evidence does not support the ALJ's decision and the decision is contrary to law. Specifically, she sets forth the following assignments of error:

- The ALJ denied plaintiff due process of law; plaintiff's written waiver of the right to counsel is invalid.

- The ALJ violated the attending physician rule. The ALJ's light work residual functional capacity finding, therefore, is not supported by substantial evidence.

*1. Did the ALJ deny plaintiff due process by denying her the right to counsel?*

Plaintiff argues that at the hearing on December 5, 2012, the ALJ failed to properly advise her of her right to counsel. Citing *Clark v. Schweiker,* 652 F.2d 399, 403 (5th Cir. 1981), plaintiff argues that since she was unrepresented at the hearing the court was required to inform her of how an attorney could aid her in the proceeding, the possibility of free counsel or a contingency fee arrangement, the limitation of attorney fees to twenty-five percent of past due benefits, and the requirement of court approval of fees. Plaintiff contends that the ALJ did not explain how an attorney could help her "in attaining and presenting evidence and/or requesting a post-hearing consultative examination of a documentary nature, or how counsel could assist in preparing witness testimony of family members, including the claimant and/or requesting the appointment of expert witnesses, including questioning or cross-examining government consultative examiners or medical and vocational experts." Doc. 10, p. 5. Plaintiff claims she was prejudiced by this error.

The Commissioner asserts that on at least three occasions prior to the hearing plaintiff was notified in writing of her right to counsel including the right to free representation and the limitation of attorney fees.  Relying on *Castillo o/b/o Castillo v. Barnhart,* 325 F.3d 550, 552 (5th Cir.2003), the Commissioner contends that the numerous written notices along with an oral reminder at the hearing of her right to counsel was sufficient to proceed without representation.  Furthermore, the Commissioner points out that plaintiff was represented by counsel through at least the date she asked for the administrative hearing and that she signed a waiver of counsel form indicating that she understood that she had the right to be represented at the hearing.  The Commissioner argues that the mere lack of counsel is insufficient for reversal.  Plaintiff must additionally show that she was somehow prejudiced by being unrepresented and the Commissioner argues that she has failed to make such a showing.

A social security claimant does not have a constitutional right to counsel at a social security hearing, *Goodman v. Richardson,* 448 F.2d 388 (5th Cir.1971), but does have a statutory right to have counsel present at a hearing.  42 U.S.C. § 406, 20 C.F.R. § 404.1705.  A claimant may waive his right to counsel if he is given sufficient information to enable him to intelligently decide whether to enlist the services of an attorney or to proceed without counsel.  "'Sufficient information' includes explanations of the possibility of free counsel, a contingency agreement, and the limitation on attorney's fees to 25% of past due benefits awarded."  *Watson v. Astrue,* 2008 WL 4072831 at *2 (W.D.La.2008)(citing *Clark v. Schweiker,* 652 F.2d 399, 403-04 (5th Cir.1981)).  A mere lack of counsel will not automatically invalidate an ALJ's decision; rather, the claimant must show that he was prejudiced thereby.  *Brock v. Chater,* 84 F.3d 726, 729 n. 1 (5th Cir.1996).  To establish prejudice a claimant must show that he "could have adduced evidence that might have altered the result."  *Id.* (citing *Kane v. Heckler,* 731 F.2d 1216, 1220 (5th Cir.1984)).

In this case the record reflects that plaintiff was given written notice of her right to an attorney on several occasions in advance of the hearing. Tr. 63, 76, 84-84. She was provided an informational pamphlet entitled "Your Right To Representation" which included information regarding how an attorney could help her, attorney fee agreements, and the limitation of fees to no more than 25% of past due benefits. Tr. 84-85. The record also reflects that plaintiff actually had retained a representative[4] but terminated his services prior to the administrative hearing. Tr. 73. At the hearing plaintiff signed a waiver of right to representation in which she acknowledged that she had been informed of her right to be represented and voluntarily waived that right. Tr. 93. Additionally, at the outset of the hearing the ALJ questioned plaintiff regarding waiving her right to representation:

>   ALJ: And I notice that you're not represented by counsel today and I know that you've reviewed the information concerning the Social Security Association's regulations on the right to counsel by an attorney or a non- attorney and that you understand your rights in th[at] regard. I also understand that you – is that correct? That you understand that process?
> 
>   CLMT: Yes, sir.
> 
>   ALJ: Now I also understand that you made a decision to proceed today without counsel. Is that correct?
> 
>   CLMT: Yes, sir.
> 
>   ALJ: And that you have reviewed the form and partially completed the form. Do you intend to sign the form indicated that you want to proceed today without counsel?
> 
>   CLMT: Yes, sir.

---

[4] An Appointment of Representative form and Social Security Fee Agreement were both signed on November 2, 2011 appointing Brad Meyer, as her representative in this proceeding. Tr. 59, 60.

        ALJ:        All right.  If you'll do so I'll accept that document as evidence.  All right.  If you give that to Ms. Delaney [hearing reporter] I'll accept that into evidence.

Tr. 23-24.

We conclude that the written notices to plaintiff coupled with the fact that she had previously hired an attorney but decided to terminate that relationship and the ALJ's reminder at the hearing of her right to counsel, sufficiently informed plaintiff of her right to an attorney and that she validly consented to proceed without representation.  Furthermore, even if plaintiff had not validly waived her right to proceed without an attorney she points to no evidence that would have been adduced at the hearing that could have changed the result had she been represented by an attorney.  Therefore, plaintiff has failed to demonstrate that he was prejudiced by the absence of counsel at the hearing.

        *2.  Did the ALJ violate the attending physician rule?*

Plaintiff argues that the ALJ failed to give controlling weight to the opinion of plaintiff's specialist, Dr. Bernauer.  Plaintiff asserts that the impairment questionnaire completed on December 14, 2011, was prepared by Dr. Bernauer and, since it was prepared by plaintiff's treating physician, should have been accorded great weight.  The report, plaintiff asserts, prohibits plaintiff from performing even sedentary work.  Plaintiff argues that this is reversible error.

In response the Commissioner argues that the ALJ had good cause for refusing to give the December 2011 report controlling weight.  The Commissioner asserts that the ALJ points out that the document was not completed and the identity of the individual who completed the questionnaire is unknown.  The Commissioner argues that the ALJ properly relied on medical evidence in the record and that determination that plaintiff had the capacity to perform light work is supported by substantial evidence.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakely v Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir.2009).  The ALJ must give a treating physician's opinion "controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence' ". *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir.1995) (quoting 20 C.F.R. § 404.1527(d)(2).   A treating physician's opinion may be given little or no weight "when the evidence supports a contrary conclusion".  *Newton v. Apfel,* 209 F.3d 445 (5th Cir.2000).  The ALJ must "always give good reasons ... for the weight [it affords the opinion]", 20 C.F.R. § 404.1527(d)(2), and must show good cause when giving that opinion little or no weight.  *Newton,* 209 F.3d at 455.  Good cause which permits an ALJ to discount the weight of a treating physician relative to other experts exists where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton,* 209 F.3d at 455–56 (citation omitted); see also *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir.1995).

When addressing the impairment questionnaire dated December 14, 2011 the ALJ stated:

> The record contains a questionnaire dated December 2011 with responses indicating functional limitation with regard to standing, walking, and sitting.  However, in comparing the range of limitation described to the remainder of evidence pertaining to claimant's impairments and functional limitations, I find that the incomplete questionnaire cannot be accorded controlling weight as the identity of the author is not known and many elements of the questionnaire were left incomplete.  It should be noted, however, that indications of a need for claimant to alternate positions were fully considered in the assessment of residual functional capacity.

Tr. 15.  The ALJ also explained the weight he gave to Dr. Bernauer's opinions as follows:

> I have also considered the clinical records from Dr. R. Dale Bernauer. His records reflect a conclusion that claimant requires surgery. He referred claimant to Dr. Anil Nanda for surgical evaluation. As of the date of this decision, no evidence has been submitted demonstrating that claimant was evaluated by Dr. Nanda or that any surgeon has determined claimant is a candidate for invasive intervention. Dr. Bernauer also opined that claimant is "exhausted with her treatment," however, Dr. Edgerson-George's report includes remarks from claimant that her level of pain improves with medications. During the hearing, the claimant described a varied range of activities that does not suggest functional incapacitation. Accordingly, I do not accord substantial weight to Dr. Bernauer's implications that conservative measures are ineffective or have been exhausted.

We note that the ALJ did not "reject" or "ignore" the December 2011 report or Dr. Bernauer's opinion, although he is free to do so when the evidence supports a contrary conclusion, *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir.1995); instead, the ALJ did not accord "substantial weight" to these opinions and fully explained his reasons for doing so. We find that the ALJ gave sound reasons for his decision to discount the December 2011 questionnaire and Dr. Bernauer's opinion and this decision was not error.

The ALJ gave great weight to the finding and opinion of Dr. Edgerson-George in reaching his RFC determination. He determined that her "overall findings and opinions are consistent with the diagnostic findings and the claimant's articulation of her limitations." Tr. 15. The ALJ additionally noted that his RFC assessment is consistent with the determination issued by Dr. Ruiz. The ALJ stated that Dr. Ruiz's findings were "consistent with the objective medical evidence" and that "no documentation was produced after [his] initial determination that warrants any significant change in the degree of limitation assessed." *Id.* Relying on this evidence and partially on the December 2011 questionnaire the ALJ determined that plaintiff retained the RFC to perform a reduced range of light duty work. We find that substantial evidence supports this conclusion.

## V.
### CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled. It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 31st day of August, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE